UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

  v.                                        Case No. 09-CR-91

JASON BUI,
KHANE SISONGKHAM,
    a/k/a TOO SHORT,
OSCAR RODRIGUEZ, JR.,
ALBERTO E. RODRIGUEZ, and
DEREK L. WEAVER,

    Defendants.

---

DECISION AND ORDER
ADOPTING THE MAGISTRATE JUDGE'S
RECOMMENDATION AS TO KHANE SISONGKHAM (DOC. # 60),
DENYING SISONGKHAM'S MOTION TO SUPPRESS EVIDENCE
FROM THE SEARCH OF THE RESIDENCE (DOC. # 41),
ADOPTING THE MAGISTRATE JUDGE'S
RECOMMENDATION AS TO JASON BUI (DOC. # 63), DENYING
BUI'S MOTION TO SUPPRESS POST-ARREST STATEMENTS (DOC. # 45),
DENYING BUI'S MOTION TO SUPPRESS EVIDENCE(DOC. # 44),
AND ADOPTING THE MAGISTRATE JUDGE'S RECOMMENDATION
AS TO ALBERTO E. RODRIGUEZ, JR. (DOC. # 90), AND
DENYING RODRIGUEZ'S MOTION TO SUPPRESS FRUITS OF
DEFECTIVE SEARCH WARRANT (DOC. # 34)

This case comes before the court on three recommendations from Magistrate Judge Patricia E. Gorence on motions filed by Khane Sisongkham, Jason Bui, and Alberto Rodriguez. Objections were filed by each of the defendants. Consequently, the court reviews de novo the recommendations to which the defendants filed timely objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(2), (3).

The first recommendation issued by Magistrate Judge Gorence addressed defendant Khane Sisongkham's motion to suppress evidence and statement. Sisongkham argued that the affidavit filed in support of the no-knock search warrant failed to establish probable cause to believe that contraband would be found on January 22, 2009, during the search of the residence at 6401 N. 40th Street, Milwaukee, Wisconsin. Judge Gorence mentioned that more detailed information regarding the ground for the informant's knowledge would have provided stronger support for the issuance of the warrant, but found that the court commissioner had a substantial basis for concluding that the search would uncover evidence of wrongdoing. Consequently, Judge Gorence did not address Sisongkham's contention that the interrogation was subject to suppression as fruit of the poisonous tree. Judge Gorence also concluded that Sisongkham failed to rebut the presumption that the officer was acting in good faith when he applied for the warrant.

In his objection, Sisgonkham argues that a reviewing magistrate judge ought "not review the warrant application with lap-dog loyalty to law enforcement, looking no further that the talismanic phrases often included by detectives in applications for a search warrant." He highlights the lack of detail provided in the affidavit underlying the search warrant, and the failure to mention when the CI provided information in the past and how the CI knew Sisgonkham to be a member of a gang. Sisgonkham further argues that the officer was not acting in good faith because the affidavit alleges nothing more than the CI gave information to police that corroborated information provided to the police by other informants that led to the arrest of felons.

Probable cause for a warrant is established when the supporting affidavit sets forth "sufficient evidence to induce a reasonably prudent person to believe that a

2

search will uncover evidence of a crime," based on the totality of the circumstances. *United States v. Farmer*, 543 F.3d 363, 377 (7th Cir. 2008) (citing *United States v. Garcia*, 528 F.3d 481, 485-86 (7th Cir. 2008).  When the affidavit includes information from a police informant, the court considers the following: 1) the extent to which the police have corroborated the informant's statements; 2) the degree to which the informant has acquired knowledge of the events through firsthand observation; 3) the amount of detail provided; and 4) the interval between the date of the events and the officer's application for the search warrant.  *United States v. Mykytiuk*, 402 F.3d 773, 776 (7th Cir. 2005)

Considering the totality of the circumstances, the affidavit at issue presented sufficient facts to establish probable cause.  The affidavit prepared by City of Milwaukee Police Officer Juan Duran, a fifteen-year veteran in law enforcement with special training in the investigation of controlled substance offenses, included information from a confidential and reliable informant that within the last seven days, Sisongkham, a/k/a "Too Short," was in possession of a large quantity of marijuana at his residence.  The CI identified the residence at 6401 N. 40th Street, Milwaukee, and that Sisongkham is a member of the "Young and Dangerous" street gang consisting of Asian males, who is known to have firearms.  Moreover, the CI positively identified Sisongkham in a photo array.

Additionally, the affidavit referred to the garbage pull conducted by the City of Milwaukee Sanitation on January 21, 2009, and two MPD detectives who sifted through the bags at the ATF building.  The detectives located a black with red draw string 30 gallon garbage bag containing 24 clear plastic cellophane wraps containing a green plant like substance residue (suspected marijuana), as well as papers and receipts with the name

3

Sisongkham. The substance tested positive for THC with a total weight of 18.44 grams. Although the affidavit could have had more detail regarding prior information provided by the CI, it stated that past information was corroborated with information received through other CIs and police reports and resulted in the arrest of several individuals wanted on felony warrants. Hence, the court agrees with Judge Gorence's finding that the affidavit underlying the search warrant was provided by probable cause.

The court also adopts Judge Gorence's conclusion that the warrant could "be saved by the good faith exception." *See United States v. Prideaux-Wentz*, 543 F.3d 954, 959 (7th Cir. 2008) *(quoting United States v. Olson*, 408 F.3d 366, 372 (7th Cir.2005)). An officer's decision to seek a search warrant is prima facie evidence that he was acting in good faith. *Id.* A defendant may only rebut this presumption of good faith by showing that the judge issuing the warrant "abandoned his role as a neutral and detached arbiter, that the officers were dishonest or reckless in preparing the supporting affidavit, or that the affidavit was so lacking in probable cause that no officer could have relied on it." *United States v. Curry*, 538 F.3d 718, 730 (7th Cir. 2008). Here, the search warrant affidavit was not so void of indicia of probable cause that a reasonable officer would believe it to be invalid. Thus, Sisongkham's motion to suppress is denied.

Next, Judge Gorence recommended that the court deny defendant Jason Bui's motion to suppress all evidence seized after the execution of the search warrant, as well as a motion to suppress post-arrest statements provided to law enforcement. Judge Gorence based her decision, in part, on an evidentiary hearing in which Manitowoc Police Detective David McCue and Manitowoc Police Lieutenant David Remiker testified and her

4

review of the video-taped interviews of defendant Bui conducted on January 22, and 23, 2009. She concluded that Bui was advised of his *Miranda* rights properly, waived those rights, and that after a conversation with a friend, stated that he wanted to cooperate and initiated contact with law enforcement officers.

Bui objects to this recommendation on the ground that the government – not Bui – reopened the dialogue with authorities after he invoked his right to an attorney during the first interrogation session on January 23, 2009. According to Bui, Sergeant McCue initiated the contact preceding the second interrogation session on January 23, 2009.

After the right to counsel is invoked, a suspect in custody may change his mind thereby making subsequent interrogation permissible, if the suspect initiates "further communication, exchanges, or conversations" with the police and waives his *Miranda* rights. *Oregon v. Bradshaw*, 462 U.S. 1039, 1044, 103 S. Ct. 2830, 77 L. Ed. 2d 405 (1983) (quoting Edwards v. Arizona, 451 U.S. 477, 485, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981). However, even if the suspect reinitiates conversation, the burden "remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation." *Id.*

Having reviewed the DVD of the audio-visual recording of police contact with Bui and the transcripts of the evidentiary hearing, the court is satisfied that Bui initiated communication with the officers after invoking his right to counsel. Soon after his arrest and while in the interrogation room in the Manitowoc County jail, Bui told McCue that he would talk to him "to some extent." Bui signed a *Miranda* waiver of rights form and

5

consented to the search of his truck. The interview, approximately 32 minutes long, did not progress beyond Bui providing background information.

The next day Bui returned to the interrogation room with McCue, DEA Special Agent Bernard D. Bolf and ATF Task Force Officer Kevin Armbruster. This time Armbruster advised Bui of the *Miranda* warnings. Bui signed the waiver of rights form. However, he indicated that he "would probably not give a statement right now" and that he wanted "to see what was going on." Armbruster made it clear to Bui that he could sit there and listen but that it was his option to proceed with or without an attorney.

Several times Armbruster asked Bui for clarification of his position regarding his waiver of rights. McCue left during the discussion to go to court. Armbruster expressed that he was uncomfortable (presumably with the ambiguity in Bui's waiver), and after Bui indicated he would rather have a lawyer, the interview ended and everyone left the room, including Bui.

A discussion resumed several hours later with McCue in the room explaining that the video tape was activated. McCue stated he understood that Bui provided his attorney's name and phone number so the prior interview ended, and that Bui must be the one to reinitiate communication. Bui responded "bring them in." McCue read the *Miranda* warnings again, and Bui signed the document.

When examined with the testimony provided by McCue and Remiker, the video tape is clear that Bui reinitiated the communication after discussion with his friend, Amy Felber. There is no evidence of threats, coercion or promises. Moreover, it is clear from the video tape that Bui, a college student in his mid-20s, had prior contacts with the

6

Case 2:09-cr-00091-PP   Filed 08/25/09   Page 6 of 12   Document 100

criminal justice system and displayed no signs of any impairment. Even though Bui did not answer every question, he never asked to have his lawyer present.

In addition, Judge Gorence recommended that the court deny Bui's motion to suppress evidence seized during the execution of the no-knock state search warrant on January 22, 2009, at 6401 N. 40th Street in Milwaukee, Wisconsin. In objecting to this recommendation, Bui made the same arguments regarding Officer Duran's affidavit that were discussed and rejected above. Even if the court had found that Officer Duran's affidavit lacked probable cause, there is no basis to find that the good faith exception does not apply. Consequently, the court will adopt the second recommendation as to Bui's motions to suppress statements and evidence.

Finally, Judge Gorence issued a third recommendation on July 9, 2009, regarding defendant Alberto Rodirguez's motion to suppress challenging the search of an open duffel bag discovered during a protective sweep during his arrest and items seized from his father's residence. The parties later reached an agreement regarding the items seized from the father's residence.

Judge Gorence conducted an evidentiary hearing with respect to this motion on May 20, 2009, and DEA Special Agent Bernard T. Bolf and Lieutenant Dave Remiker testified to determine whether the duffel bag was open or closed during the time of the search. At the time of Rodriguez's arrest, Bolf and other agents were stationed at the back door of the first-floor apartment and Remiker was stationed at the front. Rodriguez refused to open the door, and Bolf announced loudly that they had an arrest warrant. After counting to three, Bolf broke the door down and the officers entered the residence. They

found Rodriguez sitting on the bed in the first bedroom on the north wall of the apartment. Bolf described the actions taken by the officers, which included a protective sweep of the common areas. When the officers came to the northeast bedroom, the door was closed. Bolf and Special Agent Mike Sasse entered and were hit by "an overpowering smell of marijuana." Bolf noticed an open duffle bag in the middle of the room on the floor, describing it as follows:

> The duffle bag was positioned basically with a flap, and the long end of the duffle bag basically was one foot by – or maybe a little larger – by one foot, three feet long, one foot deep type duffle bag positioned north/south in the room in the middle of the room with a flap that was three-quarters of the way opened; and I could observe ziplock bags consistent with packaging of pounds or for multi pounds of marijuana in the duffle bag, and that's where I realized the smell was coming from."

Bolf testified that he did not touch or open the bag, but bent down and said "that's where the marijuana is coming from." A minute or two later Remiker entered the room.

Remiker testified that he had been advised by an officer that there was an odor of marijuana in one of the bedrooms. Remiker entered the room and noted "the strongest odor" of fresh marijuana he had ever smelled. Remiker testified that the blue duffle bag was probably between two and three feet long by a foot and a half wide. The zipper was opened between half and three-quarters, and there was nothing sticking out. With a flashlight on the duffle, Remiker noticed a very small reside like a green vegetable plant material that was in some of the bags. Remiker may have touched the bag with his flashlight or foot but did not open the flap with his hand. Based on his observations

8

regarding the duffle bag and the small amount of suspected marijuana found in the living room, a search warrant was obtained.

Judge Gorence found the evidence unequivocal that the bag was open at the time Bolf went into the residence. Specifically, when Bolf opened the door as part of the protective sweep, there was an overpowering smell of marijuana and an open duffle bag with visible ziplock bags.

Because Rodriguez expanded the motion to suppress during the evidentiary to challenge the scope of the protective sweep, another evidentiary hearing was conducted on June 25, 2009. Bolf and Remiker testified again, and Judge Gorence concluded that the protective sweep was proper.

A protective sweep is a recognized exception to the Fourth Amendment's warrantless search prohibition. *Maryland v. Buie*, 494 U.S. 325, 331, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990). Officers may, incident to arrest and "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* at 334, 494 U.S. 325, 110 S. Ct. 1093, 108 L. Ed. 2d 276. A search beyond those parameters is justified when there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Whether a protective sweep is reasonable is a fact specific inquiry. *United States v. Burrows*, 48 F.3d 1011, 1016 (7th Cir.1995) (stating that the inquiry is very fact specific and requires that the circumstances of a particular encounter be assessed

carefully in light of the overarching policy concerns articulated in *Buie* and other cases recognizes exceptions to the warrant requirement when officer safety is at risk).

Mindful that a protective sweep is a quick and limited inspection of the premises incident to arrest, the court finds the officer's actions with respect to the duffel bag were within the scope of the protective sweep. Rodriguez refused to answer the door, and the officers were required to enter the apartment forcibly. The officers did not know if persons other than Rodriguez were in the apartment thereby making it reasonable to open the closed door of the northeast bedroom. Both officers who testified observed the overpowering smell of fresh marijuana coming from the room. With due regard to their credible testimony that the duffel was open and the ziploc bags visible, the court finds no basis upon which to grant Rodriguez's motion.

Specifically, during the June 25, 2009, evidentiary hearing, Bolf, a nineteen-year of the Drug Enforcement Administration's Green Bay, Wisconsin office, testified that he participated in the execution of an arrest warrant for Alberto Rodriguez at 724 N. 10th Street, Manitowoc, Wisconsin, a first floor duplex apartment, around 6:45 a.m., April 9, 2009, with seven or eight other officers. The arrest warrant was for Rodriguez who had been indicted with four other individuals in the Eastern District of Wisconsin on drug trafficking charges.

When executing the warrant, four to five officers were stationed at the rear door and were required to use force to enter the approximately 700 square foot first floor unit. Bolf proceeded through the kitchen toward an east bedroom while other officers proceeded through the kitchen and turned left into Rodriguez's bedroom. Before entering

10

this second bedroom, Bolf held up a bit for SA Mike Sasse of the Wisconsin Department of Criminal Investigation. Both conducted a sweep of the second bedroom then exited. The sweep of the entire apartment took about 30 seconds.

Bolf further testified that in addition smelling marijuana in the second bedroom, other officers reported to him that they observed marijuana residue on a coffee table in the middle of the living room. While exiting, Bolf observed green "residue-ish parsley flakes" consistent with marijuana on the coffee table. In addition, Bolf testified that he went to the first bedroom where officers were getting Rodriguez ready to be transported, said to Rodriguez that he could smell marijuana and asked for consent to search. Rodriguez refused and the officers exited the residence.

Lieutenant Remiker, a lieutenant with the Manitowoc Sheriff's Department assigned as the supervisor fo the Manitowoc County Drug Unit, also testified that he was involved in the execution of the federal arrest warrant for Alberto Rodriguez. Remiker was stationed at the front of the home, and the officers at the rear of the home entered forcibly into the home. Once he entered the home, Remiker was told by other officers that there was a duffle bag in the front bedroom with a strong odor of marijuana in the room. Remiker could smell it immediately outside of the room. Moreover, Remiker observed a substance that looked like marijuana on top of the coffee table in the living room.

Significantly, Remiker testified that when he entered the apartment he wasn't sure what was going on and how many people were in there. He wasn't sure whether they had located Rodriguez, "5 other people, 20 other people," because there was no radio communication. Once he was in the apartment he determined it was secure. Remiker was

in the apartment between three to five minutes and ended up preparing the affidavit in support of the search warrant. Remiker left when the other officers left because he felt that there was enough stuff to apply for the search warrant and Detective Vogal was assigned to sit outside of the residence to secure it after they left. Now, therefore,

IT IS ORDERED that the magistrate judge's recommendation dated May 27, 2009, is adopted.

IT IS FURTHER ORDERED that defendant Khane Sisongkham's motion to suppress is denied.

IT IS FURTHER ORDERED that the magistrate judge's recommendation dated May 29, 2009, is adopted.

IT IS FURTHER ORDERED that defendant Jason Bui's motions to suppress post-arrest statements and evidence are denied.

IT IS FURTHER ORDERED that the magistrate judge's recommendation date July 9, 2009, is adopted.

IT IS FURTHER ORDERED that Alberto Rodriguez's motion to suppress the fruits of a defective search warrant is denied.

Dated at Milwaukee, Wisconsin, this 25th day of August, 2009.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE